UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
KEITH WILLIAMS,                                            :
                                                           :
                              Plaintiff,                   :
                                                           :         **OPINION AND ORDER**
              -against-                                    :         13-CV-589 (DLI)
                                                           :
CAROLYN W. COLVIN,[1]                                      :
Commissioner of Social Security,                           :
                                                           :
                              Defendant.                   :
-------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

On September 2, 2010, Plaintiff Keith Williams ("Plaintiff") filed an application for Social Security disability insurance benefits ("DIB") and, on September 22, 2010, filed an application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), claiming that he had been disabled since January 13, 2010. (*See* Certified Administrative Record ("R.") 102, 390, Dkt. Entry No. 18.) On November 30, 2010, these applications were denied and Plaintiff filed a written request for a hearing. (R. 26-32, 38, 40.) On March 14, 2012, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge Andrew S. Weiss (the "ALJ"). (R. 551-66.) By a decision dated March 27, 2012, the ALJ concluded Plaintiff was not disabled within the meaning of the Act. (R. 10-20.) On December 11, 2012, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (R. 6-9.)

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g). (*See* Complaint ("Compl."), Dkt. Entry No. 1.) The Commissioner moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil

---

[1]      Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Carolyn W. Colvin shall be substituted for Commissioner Michael J. Astrue as the defendant in this action.

Procedure, seeking affirmation of the denial of benefits. (*See* Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Mem."), Dkt. Entry No. 13.) Plaintiff cross-moved for judgment on the pleadings, seeking reversal of the Commissioner's decision, or alternatively, remand. (*See* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem."), Dkt. Entry No. 15.) For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted and Plaintiff's motion for judgment on the pleadings is denied. This action is dismissed in its entirety.

## BACKGROUND

### A. Non-Medical and Self-Reported Evidence

Plaintiff was born in 1968. (R. 554.) He graduated high school and attended college for two years. (R. 107, 554.) In 1991, Plaintiff began working for Continental Airlines as a baggage handler, lifting bags as heavy as 75 pounds. (R. 107-08, 122, 134, 148, 555.) In January 2010, Plaintiff injured his neck and back at work. (R. 107, 555-57.) Plaintiff's last day of work was January 13, 2010. (R. 106, 555, 557.)

In a function report dated October 17, 2010 that Plaintiff completed in connection with his application, Plaintiff indicated that he lived with his family. (R. 126.) Each day he took his medications after breakfast and got ready for his medical appointments, including physical therapy. (*Id.*) He cooked dinner for himself and his daughters, preparing meals on a regular basis. (R. 126, 128.) He had the ability to care for his personal needs, but did require assistance to put on his shoes. (R. 127.) Plaintiff drove his car every day. (R. 129.) He grocery shopped with his fiancée on a biweekly basis. (*Id.*) He read and talked on the phone each day. (R. 130.) Plaintiff indicated that he was able to follow spoken and written instructions, could finish projects that he started, and had no problems paying attention. (R. 132.)
2

In a report filed after the Commissioner denied his application, Plaintiff noted that, since November 1, 2010, his low back pain had worsened and it had become "very hard" for him to sit or stand for a long period of time. (R. 115.) He claimed he could not hold his head up for a long period of time without fainting. (*Id*.) He also claimed that, due to his neck pain, he could not sleep without taking pain medication. (R. 115, 119.)

On March 14, 2012, Plaintiff testified at his hearing that it was difficult for him to assist his fiancée with household chores. (R. 559.)

**B.     Medical Evidence**

On December 28, 2009, Plaintiff treated with Sunil H. Butani, M.D., for an injury to his right elbow, sustained at work on December 25, 2009. (R. 294-95.) Dr. Butani took x-rays, which were negative. (R. 294.) Dr. Butani prescribed Naproxen, recommended a rehabilitation program, and ordered a magnetic resonance imaging study ("MRI") of the elbow. (R. 295.)

On January 13, 2010, Plaintiff visited Dr. Butani, and indicated that he "still ha[d] severe pain across his lower back" and was no longer able to work as a baggage handler, as his position required heavy lifting. (R. 293.) Dr. Butani diagnosed Plaintiff with severe low back pain syndrome and opined that Plaintiff was totally disabled from his job. (*Id*.) He recommended that Plaintiff treat with lumbar epidural steroid injections, which Plaintiff underwent on January 25, 2010, February 1, 2010, April 14, 21, and 28, 2010, June 2, 2010, July 19, 2010, and September 7, 2010. (R. 225-34, 261-62, 280, 282, 426, 446-57.)

On January 22, 2010, at the request of Dr. Butani, Bernard J. Savella, M.D., a neurologist, examined Plaintiff regarding Plaintiff's complaints of headaches, neck pain, poor concentration, blurry vision, irritability, depression, and symptoms of radiculopathy. (R. 510-11.) Plaintiff indicated that he suffered from back injuries in 2008 and 2009. (R. 510.) Dr.

3

Savella diagnosed Plaintiff with cerebral concussion and cervical sprain with muscular contraction headaches. (R. 511.) He recommended physical therapy. (*Id.*) Additionally, on January 22, 2010, Plaintiff began receiving chiropractic care three times per week from Joseph F. Merlo, D.C. (R. 235.)

On January 25, 2010, Plaintiff underwent a MRI of his right elbow, which revealed a small joint effusion and normal tendons. (R. 213.)

On February 2, 2010, Norma Bilbool, M.D., and Dr. Butani examined Plaintiff's elbow. (R. 292.) The doctors referred Plaintiff for electromyography ("EMG") and nerve conduction studies ("NCS"), prescribed Percocet, and opined that Plaintiff would benefit from vocational rehabilitation. (*Id.*) On February 4, 2010, Plaintiff underwent a MRI of the cervical spine, which revealed small/moderate posterior disc herniation at C4-C5, small posterior disc bulges at C5-C6, C7-T1, T1-T2, and T2-T3, and a moderate posterior disc herniation at C6-C7. (R. 217-18.) On February 17, 2010, Plaintiff visited Dr. Butani complaining of continued low back and right elbow pain. (R. 291.) Dr. Butani reported a positive Tinel's sign and painful lumbar spine motion. (*Id.*) He noted that Plaintiff could not work as a baggage handler. (*Id.*)

On March 11, 2010, Dr. Butani examined Plaintiff. (R. 289-90.) Upon examination, Dr. Butani noted that Plaintiff's range of motion for his lumbar spine was decreased, with tenderness in certain areas. (R. 289.) The straight leg test was negative. (*Id.*) Plaintiff had positive Patrick's, Tinel's sign, and piriformis tests. (*Id.*) Dr. Butani advised Plaintiff to continue with physical therapy and to begin vocational rehabilitation. (R. 290.) On March 17, 2010, Dr. Butani noted spasm and tenderness across Plaintiff's lumbar spine. (R. 432.) Dr. Butani opined that Plaintiff was "totally disabled from his job" and again suggested that Plaintiff begin vocational rehabilitation. (*Id.*) On April 8, 2010, Dr. Butani examined Plaintiff with results

4

similar to those of his March 11 examination. (R. 287.) On April 19, 2010, an x-ray of Plaintiff's lumbar spine revealed minimal degenerative changes. (R. 296.)

On May 14, 2010, Plaintiff visited the Mercy Medical Center emergency room, complaining of red eyes and a burning sensation in his stomach, but was discharged the next day. (R. 243-53.)

On June 3, 2010, at the request of Dr. Butani, Aron D. Rovner, M.D., examined Plaintiff for his complaints of pain radiating down his right arm with numbness and paresthesia in his fingers as well as back pain radiating down his right leg. (R. 215-16.) Upon examination, Dr. Rovner reported that Plaintiff's cervical spine had limited range of motion, positive Spurling sign, diminished strength in the right grip and biceps. (*Id*.) Upon examination, Plaintiff's lumbar spine had limited range of motion, his straight leg raising was positive on the left side and negative on the right. (R. 216.) Dr. Rovner diagnosed Plaintiff with cervical radiculopathy, back pain, neck pain, and multiple cervical disc herniations. (*Id*.) He opined that Plaintiff may be a candidate for surgery. (*Id*.) On June 24, 2010, Plaintiff returned to Dr. Rovner, who noted that Plaintiff's conservative treatment had failed and recommended surgery. (R. 479.)

On July 1, 2010, Dr. Butani examined Plaintiff and opined that Plaintiff was "totally disabled from his [baggage handling] job," but that Plaintiff could do light duty work and that Plaintiff should begin vocational rehabilitation. (R. 284-85.) Dr. Butani indicated that Plaintiff could not do any work that involved heavy lifting. (R. 285.) On September 7, 2010, Drs. Butani and Bilbool examined Plaintiff. (R. 280-81.) They noted that Plaintiff's lumbar range of motion was within functional limits. (R. 280.) Plaintiff's right elbow was normal. (*Id*.) Palpation revealed multiple trigger points over the right L3-S1 paraspinals. (*Id*.) They diagnosed Plaintiff with facet syndrome of the lumbar spine and noted that they should rule out lumbar spine

5

radiculopathy. (*Id.*) They referred Plaintiff for NCS and EMGs of the lower extremities. (*Id.*) They noted that Plaintiff had not yet started physical therapy. (*Id.*)

On October 18, 2010, Dr. Merlo, Plaintiff's chiropractor, completed a questionnaire (R. 235-40), indicating that Plaintiff's diagnoses were cervical herniated nucleus pulposes "with radiculopathy left, spinal stenosis" (R. 235). He indicated that Plaintiff could occasionally lift and carry 15 pounds, maximum 25 pounds, and that Plaintiff could stand, walk, and sit without limitation. (R. 238.)

On October 18, 2010, Plaintiff complained of chest discomfort and visited Sungwai Chiu, M.D., a cardiologist. (R. 223-24.) Dr. Chiu noted that Plaintiff had a regular heart rate and rhythm with no murmurs. (R. 223.) Dr. Chiu also noted that a stress test was positive for myocardial ischemia, and that an echocardiogram revealed a normal left ventricle and mild septal hypokinesis. (*Id.*) Dr. Chiu recommended catheterization to screen for significant coronary artery disease. (*Id.*)

On October 21, 2010, Plaintiff visited Iqbal Teli, M.D., for a consultative examination. (R. 329-34.) Dr. Teli noted that Plaintiff was able to walk on heels and toes without difficulty, without assistance, and with a normal gait and stance. (R. 330.) Upon examination, he found normal ranges of motion for the cervical spine, negative straight leg raising, normal ranges of motion for the wrists, knees and ankles, full strength in all extremities, and no muscle atrophy. (R. 331.) He diagnosed Plaintiff with a history of neck pain, low back pain, hypertension, and rule out cardiac ischemia. (*Id.*) He opined that Plaintiff had a mild restriction for squatting, moderate restriction for twisting and turning his neck, and moderate restriction for lifting and carrying heavy weight. (R. 331-32.) Plaintiff had a mild restriction for overhead activities involving both arms. (R. 332.)

On October 21, 2010, Plaintiff also visited Toula Georgiou, Psy.D., for a psychological evaluation. (R. 318-21.) On examination, Dr. Georgiou indicated that Plaintiff's manner of relating, social skills, and overall presentation were adequate. (R. 319.) His thought process was coherent and his sensorium clear. (*Id.*) His attention and concentration were intact, with average cognitive functioning. (*Id.*) Plaintiff told Dr. Georgiou that he was able to care for his personal needs and manage his finances independently. (R. 320.) He also told her that he did not perform household chores, drive or take public transportation. (*Id.*) Dr. Georgiou diagnosed Plaintiff with depressive disorder not otherwise specified ("NOS") and history of alcohol abuse in remission for two months. (*Id.*) Dr. Georgiou opined that Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, attend to and concentrate on simple tasks, and had the ability to learn new tasks. (*Id.*) He was capable of making decisions and relating with others. (*Id.*) However, she noted that he may have difficulty maintaining a regular schedule and dealing with stress. (*Id.*)

On November 1, 2010, M. Durand, a state agency case manager, contacted Plaintiff and filed a report summarizing his discussion with Plaintiff. (R. 153.) Plaintiff told Durand that he saw a therapist weekly, but that the therapist was unwilling to complete any forms in connection with his application. (*Id.*)

On November 2, 2010, E. Gagan, M.D., a state agency review psychiatrist, reviewed the record and completed a mental residual functional capacity assessment. (R. 376-89.) Dr. Gagan concluded that Plaintiff's depressive disorder and history of alcohol abuse were not severe. (R. 376, 379, 384.) He opined that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and no repeated episodes of deterioration. (R. 386.) He concluded that Plaintiff had the ability to understand, remember, and carry out simple

instructions. (R. 403.) Plaintiff could maintain concentration, pace, and persistence and would be able to interact and adapt. (*Id*.)

On November 4, 2010, Plaintiff underwent a cardiac catheterization and angiography, which revealed normal coronary arteries and normal left ventricular function. (R. 341-44.)

On November 23, 2010, R. Reynolds, a state agency review physician reviewed the evidence in the record regarding Plaintiff's physical impairments (cervical radiculopathy, left spinal stenosis, and angina). (R. 399.) He opined that Plaintiff could perform light work with the restrictions of standing and walking for no more than six hours per work day, lifting 20 pounds occasionally and ten pounds frequently. (*Id*.)

On January 13, 2011, at the request of Dr. Rovner, Sam J. Yee, M.D., examined Plaintiff for his radiating neck pain. (R. 524-27.) On examination, Plaintiff had a limited range of motion for his neck and shoulder, with spurlings to the right upper extremity. (R. 526.) His lower extremities had near full muscle strength. (*Id*.) Dr. Yee diagnosed cervical radiculopathy and low back pain syndrome. (R. 527.)

On January 17, 2011, Anil Patil, M.D., examined Plaintiff regarding his complaints of neck and low back pain. (R. 496-98.) Plaintiff's extremities had normal ranges of motion. (R. 497.) Plaintiff was neurologically intact, had an antalgic gait, and full muscle strength. (*Id*.) On examination, his cervical spine revealed moderate muscle spasms and tenderness in the left cervical paraspinal muscles. (*Id*.) His cervical and lumbar ranges of motion were reduced. (*Id*.) Dr. Patil diagnosed Plaintiff with cervicalgia, lumbargo, lumbar disc displacement, and lumbosacral neuritis unspecified. (*Id*.) He renewed Plaintiff's prescription for Oxycodone. (R. 498.)

On February 10, 2011, Dr. Rovner examined Plaintiff and found full motor strength and grip in all extremities. (R. 499-500.) Dr. Rovner noted that Plaintiff wanted to avoid surgery for his cervical herniated discs and intended to seek approval for a series of three epidural steroid injections. (R. 500.) Plaintiff visited Dr. Rovner for follow-up appointments and the findings remained unchanged. (R. 501-09.) Dr. Rovner opined that Plaintiff was "100% disabled." (R. 508.) Plaintiff underwent epidural injections on May 5, June 2, and June 27, 2011. (R. 512-19.) On August 18, 2011, an MRI of Plaintiff's cervical spine revealed disc herniations at C4-C5, C5-C6, and C6-C7. (R. 520-21.)

On November 16, 2011, Dr. Merlo completed at "Work Comp Interim Report," in which he opined that Plaintiff was temporarily precluded from his regular work duties as a baggage handler. (R. 528-30.)

## DISCUSSION

**A.     Standard of Review**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal citations omitted). The latter determination

requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (quotations omitted).

**B.     Disability Claims**

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also*

*Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. §§ 404.1520 and 416.920. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education and work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002) (citing *Carroll,* 705 F. 2d at 642).

**C.     The ALJ's Decision**

On March 27, 2012, the ALJ issued a decision denying Plaintiff's claims. (R. 10-20.) The ALJ applied the requisite five-step analysis in reaching this conclusion. At the first step, the

ALJ found that Plaintiff was insured and had not engaged in substantial gainful activity since January 13, 2010, the alleged onset date. (R. 15.) At the second step, the ALJ found that Plaintiff's severe impairments consisted of cervical spine disorder and lumbar spine disorder. The ALJ noted that Plaintiff was diagnosed with depressive disorder and had a history of alcoholic abuse, in early remission; however, the ALJ explained that these diagnoses were not severe impairments because "the record does not show that these impairments impose more than minimal limitations on the claimant's ability to perform basic mental work activities." (*Id.*)

At the third step, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the Listings. (R. 16.) At the fourth step, the ALJ found that Plaintiff retained the RFC to perform a full range of sedentary work. (R. 17.) The ALJ further found that Plaintiff was unable to perform his past relevant work as a baggage handler. (R. 18.) Finally, at the fifth step, the ALJ found that Plaintiff was a younger individual (as defined under 20 C.F.R. §§ 404.1563 and 416.963 as an individual ages 18-44), who had at least a high school education, and the ability to communicate in English. (R. 18-19.) Under these circumstances, and by applying the appropriate Medical-Vocation Rules, the ALJ concluded that Plaintiff was not disabled under the Act. (R. 19.)

**D.    Application**

The Commissioner moves for judgment on the pleadings, seeking affirmation of the denial of Plaintiff's benefits on the grounds that the ALJ applied the correct legal standards to determine that Plaintiff was not disabled and that the factual findings are supported by substantial evidence. (*See generally* Def. Mem.; Reply Mem. of Law in Further Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Reply Mem."), Dkt. Entry No. 17.) Plaintiff cross-moves for judgment on the pleadings, contending the ALJ failed to properly evaluate the medical evidence:

12

(1) with respect to the severity of Plaintiff's depression; (2) with respect the criteria for Listing 104.A, and (3) in assessing Plaintiff's RFC by misapplying the treating physician rule. (*See generally* Pl. Mem.)

Upon review of the record in this case, the Court finds that the ALJ applied the appropriate legal standards and his decision is supported by the substantial evidence. Plaintiff's arguments to the contrary are unfounded.

### 1. Plaintiff's Mental Impairment

Plaintiff contends that the ALJ erred at step two by ruling that Plaintiff's mental impairment of depression was not severe. (*See* Pl. Mem. at 16-17.) To evaluate the severity of Plaintiff's depression, the ALJ reviewed the record to determine whether Plaintiff had established the criteria for a mental disorder under Listing 12.00C. In particular, he reviewed the record for any evidence of impairment of the four functional areas assessed in Listing 12.00C: daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). The ALJ correctly noted that there was no evidence that the Plaintiff's depression caused more than a mild limitation with respect to the first three functional areas or any decompensation episodes. (R. 15-16.) These findings are supported by the substantial evidence in the record as they reflect the findings of Plaintiff's psychologist, Dr. Georgiou, and the state agency review psychiatrist, and there is no evidence of regular psychiatric treatment or any psychiatric-related hospitalizations. (R. 153, 318-21, 376-89.) Moreover, these records are consistent with Plaintiff's description of his daily activities. (R. 126-30, 132-33.) Accordingly, the ALJ's findings as to the severity of Plaintiff's depression are affirmed.

## 2. Plaintiff's Neck Impairment

Plaintiff contends that remand is appropriate as the ALJ incorrectly concluded that his cervical and lumbar spinal disorders did not satisfy the criteria of Listing 1.04(A). (Pl. Mem. at 15-16.) At step three, the ALJ "specifically considered Listing 1.04," but found that the record did not support findings of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss atrophy (with associated muscle weakness or muscle weakness) accompanied with sensory or reflex loss, and a positive straight leg raising test (sitting and supine); spinal arachnoiditis; or lumbar spinal stenosis resulting in pseudoclaudication and inability to ambulate effectively . . . ." (R. 16-17.)

Section 1.04(A) sets forth the conditions required to establish disorders of the spine under 20 C.F.R., Pt. 404, Subpt. P, App. 1. Specifically, an individual must have a disorder of the spine involving:

> (. . . herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including the cauda equine) or the Spinal cord. *With*:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04(A) (emphasis added).

The medical records support the ALJ's conclusion that Plaintiff's cervical and lumbar spinal disorders do not meet the requirements for Listing 1.04(A). With respect to Plaintiff's lumbar spinal disorder, the MRI revealed a "mild disc bulge" at the L2-L3 level without any "significant spinal or foraminal stenosis." (R. 299.) The L2-L3 disc bulge did not compromise

14

either the nerve root or spinal cord. (*Id.*) With respect to Plaintiff's cervical spinal disorder, the MRI did find disc herniations at the C4-C5, C5-C6, and C6-C7 levels which "impinged upon midline ventral surface of the cervical spinal cord." (R. 520-21.) However, there was no evidence of the associated spinal complications required to satisfy Listing 1.04(A). Plaintiff did not consistently exhibit reflex loss in his lower extremities. (R. 280, 282, 289, 331, 497, 499, 501, 503, 505-06, 508, 510.) With the exception of one occasion, his muscle strength was intact. (R. 282, 289, 331, 497, 499, 501, 503, 505-06, 508.) Further, Plaintiff did initially report decreased sensation (R. 280, 289, 331), but his most recent examinations reflect intact sensation (R. 282, 497, 499, 501, 503, 505-06, 508, 510). Thus, the ALJ's decision is supported by the substantial medical evidence in the record.

### 3. Plaintiff's RFC

Plaintiff contends that the ALJ erred in finding that Plaintiff had the ability to perform sedentary work and that, in doing so, the ALJ misapplied the treating physician rule. (Pl. Mem. at 12-15.) The ALJ found that Plaintiff retained the ability to perform sedentary work. (R. 17.) The ALJ defined sedentary work as "involving lifting no more than ten pounds at a time, occasionally lifting or carrying small articles (such as docket files, ledgers, and small tools), sitting up to a total of six hours in an eight hour workday, and standing or walking up to a total of two hours in an eight hour workday." (*Id.*) In reaching the conclusion that Plaintiff could perform such work, the ALJ indicated that he gave "significant weight" to the opinions of treating physicians Bibool and Butani to the extent those opinions were consistent with the medical evidence in the record, but declined to give "controlling weight or special significance" to opinions finding Plaintiff "100 percent disabled" because that assessment is reserved for the Commissioner. (R. 18.) He gave "[s]ignificant weight" to the opinion of Dr. Teli and "[s]ome

15

weight to the State agency medical consultant." (*Id*.) He gave "[l]ittle weight" to the opinion of Plaintiff's treating chiropractor, Dr. Merlo, because his opinion that Plaintiff was "temporarily and totally precluded from work" was "vague and not consistent with the substantial evidence of record." (*Id*.) The ALJ further noted that Dr. Merlo's assessment was unsigned. (*Id*.)

First, the ALJ's function-by-function assessment was adequate as the ALJ made sufficient findings as to Plaintiff's capabilities. *See Oliphant v. Astrue*, 2012 WL 3541820, at *23 (E.D.N.Y. Aug. 14, 2012) (concluding that the Commissioner sustained his burden at step five, as the ALJ, in determining that plaintiff could perform sedentary work, made findings as to plaintiff's ability to sit, stand, walk, lift, carry, push, and pull, in addition to findings regarding plaintiff's mental and physical ability to perform sedentary work); *see also Murphy v. Astrue*, 2013 WL 1452054, at *6 (W.D.N.Y. Apr. 9, 2013) (finding that "although the ALJ did not methodically walk through each 'function,' the ALJ adequately considered how the evidence supported her conclusion concerning Plaintiff's physical limitations and her ability to perform sedentary work" as the ALJ detailed medical evidence from treating sources, opinions from state-medical examiners, as well as Plaintiff's ability to live independently).

Second, the ALJ did not err in his application of the treating physician rule. With respect to "the nature and severity of [a claimant's] impairment(s)," 20 C.F.R. § 404.1527(d)(2), "[t]he SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F. 3d 99, 106 (2d Cir. 2003). A claimant's treating physician is one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F. 2d 43, 46 (2d Cir. 1988). A treating physician's medical opinion regarding the nature and severity of a claimant's impairment is

given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record." *Burgess v. Astrue*, 537 F. 3d 117, 128 (2d Cir. 2008) (quotation marks and alteration omitted). The Second Circuit has noted that "[w]hile the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Lazore v. Astrue*, 443 F. App'x 650, 652 (2d Cir. 2011) (quoting *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002)). Where a treating source's opinion is not given controlling weight, the proper weight accorded by the ALJ depends upon several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Soc. Sec.*, 143 F. 3d 115, 118 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1527(c)(2).

The ALJ did not err in assigning less weight to the opinions of Drs. Bibool, Butani, and Merlo regarding Plaintiff's RFC. Initially, each of these physicians indicated that Plaintiff was disabled from his past relevant work as a baggage handler, which required heavy duty work from Plaintiff. (R. 291, 293, 432, 284-85, 528-30.) They did not comment on Plaintiff's ability to perform light duty work until Plaintiff was further along in his treatment plan. The ALJ found Plaintiff had the ability to perform the full range of sedentary work, which is of a significantly lower activity level than Plaintiff's past relevant work. (R. 17-18.) Notably, Dr. Butani recommended vocational rehabilitation at a March 2010 appointment. (R. 432.) In July 2010, Dr. Butani opined that Plaintiff could perform light duty work. (R. 284-85.) On October 17, 2010, Dr. Merlo indicated that Plaintiff could occasionally lift and carry 15 pounds, maximum 25 pounds, and that Plaintiff could stand/walk and sit without limitation. (R. 238.) These

opinions are supported by the medical records in the evidence. Indeed, Plaintiff treated conservatively.

Dr. Teli, who conducted a consultative examination of Plaintiff, opined that Plaintiff had mild restrictions for squatting, moderate restrictions for twisting and turning his neck, and moderate restrictions for lifting and carrying heavy weight. (R. 331-32.) The ALJ did not err in assigning significant weight to Dr. Teli's opinion because it was consistent with other medical evidence in the record. *Cf. Diaz v. Shalala*, 59 F. 3d 307, 313 n.5 (2d Cir. 1995) (explaining that the regulations allow, among other things, "the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record"); *Oliphant*, 2012 WL 3541820, at *15 ("[U]nder the Regulations, opinions of non-treating and non-examining doctors can override those of treating doctors as long as they are supported by evidence in the record.") (citing *Schisler v. Sullivan*, 3 F. 3d 563, 568 (2d Cir. 1993)).

Plaintiff contends that remand is necessary because the ALJ ignored Dr. Rovner's opinion that Plaintiff was "100% disabled." (Pl. Mem. at 14.) The ALJ did not mention Dr. Rovner by name in the portion of his decision analyzing Plaintiff's RFC. However, he indicated that he had reviewed Dr. Rovner's report when he cited to Exhibit 23F, which contained the RFC assessments of each of Plaintiff's physicians, including those of Dr. Rovner. (R. 496-537.) Notably, the ALJ specifically quoted Dr. Rovner's opinion that Plaintiff was "100% disabled," explaining that he declined to give controlling or special weight to that finding because that conclusion is reserved to the Commissioner. (R. 18.) Thus, the ALJ did not ignore Dr. Rovner's report. Moreover, Dr. Rovner's report was contradicted by other medical evidence in the record. Three of Plaintiff's treating physicians and all of the state agency physicians indicated that Plaintiff had the ability to perform light duty work. (R. 238, 284-85, 331-32, 399, 432.) It is

unnecessary to remand this action to the ALJ to allow him to specifically refer to Dr. Rovner by name in his RFC analysis the ALJ did consider Dr. Rovner's opinion. Moreover, the end result would be the same. The Second Circuit has explained that "[w]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration." *Zabala v. Astrue*, 595 F. 3d 402, 409 (2d Cir. 2010) (declining to remand even though the ALJ failed to satisfy the treating physician rule as the medical record that the ALJ overlooked would not have altered the ALJ's disability determination) (quoting *Johnson v. Bowen*, 817 F. 2d 983, 986 (2d Cir. 1987)); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. May 2, 2013) (summ. order) (finding harmless error, in dicta, when the ALJ failed to address two of plaintiff's numerous medical conditions at step two as the ALJ specifically considered those conditions during the subsequent steps). Accordingly, remand is unnecessary.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted. Plaintiff's cross-motion for judgment on the pleadings is denied and this action is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
      July 25, 2014

>                /s/
>      DORA L. IRIZARRY
>    United States District Judge